COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-276-CR

 

 


 
 
 MUQTASID QADIR
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM 213TH
 DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

 

          Appellant Muqtasid Qadir,
pro se, appeals from the trial court’s denial of his motion for forensic DNA
testing.  We will affirm.

          This appeal finds its genesis in
Qadir’s conviction for murdering his girlfriend.  See Qadir v. State, No. 02-96-00123-CR,
slip op. at 1–2 (Tex. App.—Fort Worth, August 14, 1997, no pet.) (not
designated for publication).  The
evidence showed that Qadir’s girlfriend, Barbara Johnson, was stabbed to death
and found by her grandfather, Joe McLane, at his house, where she resided.  Johnson had been repeatedly stabbed in her
shoulders, head, neck, hands, and arms. 
McLane called the police, who arrived shortly thereafter and secured the
scene.  McLane looked through the house
but did not discover anything missing. 
Fort Worth Police Officer G.T. Baskin was one of the first officers on
the scene, and in his search of the premises, he discovered a trail of blood
leading away from the house to the north. 
Other officers gathered evidence, such as blood samples and
fingerprints, at the scene.

          The day after the murder, Detective
John Thornton questioned Qadir at his place of work, ostensibly because he had
been dating Johnson.  During the
interview, Thornton became suspicious because Qadir’s hand was cut; Detective
Thornton invited Qadir down to the station. 
Police procured a warrant for samples of Qadir’s blood, hair, and saliva
and tests later revealed that the blood matched the blood type of some of the
samples taken from different locations at the scene of the murder.  Further DNA testing provided an even more
conclusive match.  A letter describing
details of the crime that had not been released to the public was later
received by the police.  Qadir’s
fingerprint was on the envelope.  Additional
evidence was elicited that Qadir had recently threatened Johnson several times.

          Since his conviction, Qadir has filed
several appeals to this court.  In 1996,
Qadir appealed his conviction directly to this court.  Id. 
This court affirmed his conviction. 
Id.  In 1999, Qadir
appealed to this court attempting to reverse the trial court’s denial of his
motion to recuse the judge presiding over his post-conviction habeas corpus
petition.  See Qadir v. State, No.
02-99-00517-CR, slip op. at 1 (Tex. App.—Fort Worth 2000, no pet.) (dismissing
appeal for want of jurisdiction).  In
2002, Qadir appealed to this court attempting to reverse an order denying his motion
to recuse the same judge from presiding over his request for DNA testing.  See Qadir v. State, No. 02-02-00077-CR,
slip op. at 1–2 (Tex. App.—Fort Worth 2002, no pet.) (holding that we lacked
jurisdiction to rule on defendant’s appeal because we have no power to review
interlocutory orders and the trial court had not yet ruled on his DNA testing request).  In 2009, Qadir filed a petition for mandamus
in this court, asking us to compel the presiding judge to rule on a motion for
DNA testing that he asserted had been pending in the trial court for seven years
without a ruling.  In re Qadir, No.
02-09-00029-CV, 2009 WL 417293, at *1 (Tex. App.—Fort Worth Feb. 20, 2009, orig.
proceeding) (mem. op.).  In that opinion,
we noted that the trial court had informed us that Qadir’s case file had been
closed for several years and that there was no pending motion for DNA
testing.  Id.  Qadir has since filed a request for DNA
testing in a motion he titled “Second, or Successive Motion for DNA Testing In Accordance
with the T.C.C.P., Article 64.”  The
trial court denied his request.  This
appeal followed.

          In his first issue, Qadir argues that
the trial court erred by denying his request to conduct post-conviction DNA
testing on items he claims were available for testing but were never tested;
namely, broken bloody glass jar fragments, a bloody kitchen table knife, and a
bloody footprint from carpet found at the crime scene.  Qadir argues that if these items were tested,
the results would exculpate him.

          Under article 64.01, a convicted
person may file a motion for forensic DNA testing of evidence containing
biological material.  Tex. Code Crim.
Proc. Ann. art. 64.01(a) (Vernon Supp. 2009). 
A motion under article 64.01 must be accompanied by an affidavit, sworn
to by the convicted person, containing facts in support of the motion.  Id.  Furthermore, the court of criminal appeals
has held that under this statutory scheme, any evidence not previously
subjected to DNA testing may not be subjected to post-conviction DNA testing
unless DNA testing was either completely unavailable at the time of trial or
was available but not technologically capable of providing probative
results.  Routier v. State, 273
S.W.3d 241, 245 (Tex. Crim. App. 2008). 
Whether Qadir may obtain post-conviction testing on these alleged
untested items thus depends upon whether he has shown that they were not
previously subjected to DNA testing through no fault of his own and that the
lack of previous testing was “for reasons that are of a nature such that the
interests of justice require DNA testing.” 
Id. at 246.  Although Qadir claims that these items were
not tested “through no fault” of his own, Qadir states that these items were
not tested because his attorney failed to conduct “an independent DNA
testing.”  DNA testing was available at
the time of trial to test the remaining items Qadir now complains of, and
several items were in fact successfully tested by the State.  Qadir does not dispute this.  Therefore, the provisions of Article
64.01(b)(1)(A) do not apply to these items. 
We overrule Qadir’s first issue.  See
Routier, 273 S.W.3d at 251–54 (holding that defendant was not entitled to
post-conviction DNA testing on previously untested blood stains because DNA
testing was available at the time of trial).

          In his second issue, Qadir argues that
newer technologies now exist that would provide “a reasonable likelihood of
results that are more accurate and probative than” the DNA tests that were run at
the time of his trial on blood from the bathroom wall, sink and floor; the
front door exterior; the front porch; an iron; and a sheet—all from the crime
scene.

          Under article 64.01(b)(2), if evidence
was previously subjected to DNA testing, the convicted person must demonstrate
in his motion that the evidence can be “subjected to testing with newer testing
techniques that provide a reasonable likelihood of results that are more
accurate and probative than the results of the previous test” in order to be
entitled to further testing.  See
Tex. Code Crim. Proc. Ann. art. 64.01(b)(2) (Vernon Supp. 2009); Dinkins v.
State, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).  In this issue, Qadir acknowledges that DNA
testing was previously performed on these items inculpating him in the
murder.  His argument seems to be that
the biological material was never tested to determine whether the blood stains
existed prior to the murder; thus, according to Qadir, the State failed to
prove that his blood was not already present at the crime scene prior to the
murder.  Qadir further argues that newer
techniques exist now that allow for the determination of how old the blood
stains were.  Even assuming Qadir had
demonstrated that the evidence can be subjected to newer testing techniques
that provide a reasonable likelihood of results more accurate and probative
than the previous results, Qadir undermines his own argument because he admits
that the State’s expert testified at trial that tests existed to “tell how old
blood is” at the time of his trial but that she never performed these
tests.  Therefore, like in Qadir’s first
issue, the provisions of Article 64.01(b)(1)(A) do not apply to these items he
now raises in his second issue because by his own stance, he had the
opportunity to test these items for a “blood time frame analysis” but failed to
do so.  We overrule Qadir’s second issue.  See Routier, 273 S.W.3d at 251–54.

In
his third issue, Qadir makes numerous complaints that amount to a challenge to
the legal sufficiency of the evidence supporting his conviction for
murder.  We conclude that Qadir’s third
issue is a collateral attack on the judgment of his murder conviction and that
we have no jurisdiction to resolve the issue.

          Although chapter 64 of the code of
criminal procedure authorizes forensic DNA testing in cases in which the
applicant meets the requirements enumerated in the statute, these amendments do
not confer jurisdiction upon this court to entertain collateral attacks on the
trial court's judgment of conviction or to review, under the guise of a DNA
testing appeal, anything beyond the scope of those articles.  See
Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2009); see also Reger v.
State, 222 S.W.3d 510, 512–13 (Tex. App.—Fort Worth 2007, pet. ref’d), cert. denied, 552 U.S. 1117 (2008)
(reasoning that the jurisdiction afforded us under chapter 64 does not extend to
collateral attacks on the judgment of conviction or allow us to revisit matters
that should have been addressed on direct appeal).  We dismiss Qadir’s third issue.

          Having overruled Qadir’s first two
issues and dismissed his third, we affirm the trial court’s judgment.

 

 

 

 

 

                                                                   BILL
MEIER

                                                                   JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DAUPHINOT, J. dissents without
opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 27, 2010











[1]See Tex. R. App. P. 47.4.